**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SWEET CHARLIE'S FRANCHISING, LLC, et al.**<br><br>v.<br><br>**SWEET MOO'S ROLLED ICE CREAM, LLC, et al.** | **CIVIL ACTION**<br><br>**No. 19-4618** |

**MEMORANDUM RE: DEFENDANTS' MOTION TO TRANSFER**

**Baylson, J.**                                                                                                          **June 19, 2020**

## I.   Introduction and Background

Plaintiffs, who operate a rolled ice cream franchise known as "Sweet Charlie's," have brought this misappropriation of trade secrets action alleging violations of the Defend Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act and asserting other common law causes of action. Plaintiffs allege that Defendants' operation of two "Sweet Moo's" rolled ice cream stores in Tennessee constitutes misappropriation of confidential trade information belonging to Sweet Charlie's that Defendants gained access to while attending a training for Sweet Charlie's franchisees in Philadelphia, Pennsylvania. The Complaint names five Defendants:

- Peter Aguib;
- Simon Ghattas, who is Peter Aguib's business partner;
- Pola Aguib, who is Peter Aguib's brother;
- Roll Up Tennessee, LLC ("Roll Up"), which is a Tennessee limited liability company that is guaranteed by Peter Aguib; and
- Sweet Moo's Rolled Ice Cream, LLC ("Sweet Moo's"), which is a Tennessee limited liability company that operated the two Sweet Moo's locations that are allegedly enjoying the benefits of the misappropriated information.

Defendants have moved to transfer this action to the Middle District of Tennessee, which is where all Defendants reside. (ECF 8.) However, the Franchise Agreement governing the contractual relationship between Sweet Charlie's and Roll Up contains a forum selection clause

that designates the courts in Delaware as the exclusive forum for the resolution of all disputes between the parties. Therefore, this Court must decide whether to retain the case (Plaintiffs' preference); transfer the case to the Middle District of Tennessee (Defendants' preference); or transfer the case, in whole or in part, to the District of Delaware.[1]

For the reasons set forth below, the Court will **DENY** Defendants' Motion to Transfer to the Middle District of Tennessee and will **TRANSFER** this action to the District of Delaware. The Court will **STAY** this case as to Defendant Sweet Moo's in light of that company's bankruptcy.

## II.   Procedural History

Plaintiffs filed their Complaint in this Court on October 3, 2019. (ECF 1.) Defendants moved to transfer the case to the Middle District of Tennessee on October 30, 2019. (ECF 8.) Plaintiffs responded in opposition on November 14, 2019. (ECF 9.)

On May 14, 2020, the Court held a recorded telephone conference with Plaintiffs' counsel and Defendants, all of whom are *pro se*.[2] Following the telephone conference, the Court ordered the parties to address "why, if the case is to be transferred, it should not be transferred to the USDC Delaware" pursuant to the Franchise Agreement's forum selection clause. (ECF 10; ECF 14.) Both parties submitted statements in response to the Court's order. (ECF 17 (Defendants' Response); ECF 18 (Plaintiffs' Response).)

---

[1] The issue of transfer arises in a somewhat unusual posture because neither party seeks to litigate in Delaware, the forum designated by the forum selection clause, and three of the defendants are not parties to the Franchise Agreement.

[2] An attorney from Tennessee, Denty Cheatham, has informally assisted Defendants in this case. Mr. Cheatham helped Defendants "prepar[e] and fil[e] [their] motion *pro se* to transfer this case," (ECF 8-2 at 8), and he attended the May 14, 2020 conference with the Court's permission.

**III.     Sweet Moo's Bankruptcy Proceedings**

On June 12, 2020, Defendants filed a "Notice of Removal of Civil Action to Bankruptcy Court," (ECF 19), and a "Notice of Filing of Bankruptcy and Assertion of Automatic Stay," (ECF 20). These documents informed the Court that Defendant Sweet Moo's filed a petition for bankruptcy in the Middle District of Tennessee. The filings reference 28 U.S.C. § 1452(a), which provides that: "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction . . . under section 1334 of this title." 28 U.S.C. § 1334(b), in turn, provides that "the district courts shall have . . . jurisdiction of all civil proceedings . . . arising in or related to cases under title 11."[3]

Defendants fail to explain why Sweet Moo's Chapter 11 filings warrant removal of this action to the Bankruptcy Court for the Middle District of Tennessee.[4] Additionally, Sweet Moo's filing of a "Notice of Removal" is procedurally ineffective. See In re Halvorson, No. 18-525, 2018 WL 6728484, at *9 (C.D. Cal. Dec. 21, 2018) (collecting cases supporting proposition that "a notice of removal seeking to [remove a district court case to bankruptcy court] is a nullity and has no legal effect").

However, in view of the bankruptcy petition, this case will be stayed as to Defendant Sweet Moo's. 11 U.S.C. § 362(a)(1); see also In re W.R. Grace & Co., 532 F. App'x 264, 267 (3d Cir.

---

[3] 28 U.S.C. § 1412 provides that: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Defendants do not cite Section 1412. This Court will not analyze transfer under that provision.

[4] The Notice of Removal states that "since the basis of [Plaintiffs'] claims are financial and go to the ability of [Sweet Moo's] to reorganize under a Chapter 11 . . . [t]his is an issue that can only be decided by [the Bankruptcy] Court." (ECF 19 at 4.) However, the basis of this lawsuit is that Defendants misappropriated trade secrets. The Notice of Removal does not explain how Sweet Moo's alleged misappropriation of trade secrets "arises in or relates to" their bankruptcy proceeding such that transfer to the bankruptcy court is required.

2013) (nonprecedential) ("Once [the company] filed for Chapter 11 protection, all actions against the company were subject to an automatic stay under 11 U.S.C. § 362.").

Although this case is stayed as to Sweet Moo's, Defendants have cited no authority requiring this Court to stay the action as to the remaining four Defendants. Therefore, the Court must determine whether this case should remain in the Eastern District of Pennsylvania or be transferred to either the Middle District of Tennessee or the District of Delaware.

## IV. Legal Standard

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in [28 U.S.C.] § 1391(b)."[5] Atl. Marine Constr. Co., Inv. v. U.S. Dist. Court for West. Dist. of Tex., 571 U.S. 49, 56 (2013). If the case fits one of the three categories outlined in Section 1391(b), then venue is proper. Id. If none of the three categories set forth in Section 1391(b) are satisfied, then venue is improper, and the action must be "dismiss[ed], or if it be in the interest of justice, transfer[red] . . . to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Even if venue is proper under Section 1391(b), the court may transfer the action to an alternative properly venued forum if doing so serves "the interest of justice." 28 U.S.C. § 1404(a). The Third Circuit has instructed that "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (emphasis added) (internal quotation marks and citation omitted).

---

[5] Under 28 U.S.C. § 1391(b), a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

4

## V. Discussion

Defendants argue that (A) venue is improper in this district under 28 U.S.C. § 1391, and therefore this action must be transferred under 28 U.S.C. § 1406(a); and (B) even if venue is proper, the Court should exercise its discretion to transfer this case to the Middle District of Tennessee under 28 U.S.C. § 1404(a). The Court disagrees in both respects.

### A. Transfer to the Middle District of Tennessee Is Not Warranted Under Section 1406(a)

Since the trade secrets that were allegedly misappropriated were developed in this district at Sweet Charlie's Philadelphia home office, the property at issue in this litigation is "situated" in Pennsylvania for purposes of venue. (ECF 9-1, Declaration of Steven Billig ¶ 12; Plaintiffs' Opposition at 6.) Therefore, "a substantial part of property that is the subject of the action is situated" in the Eastern District of Pennsylvania, making venue in this Court proper. 28 U.S.C. § 1391(b)(2). As a result, Defendants' first argument—that this case *must* be transferred under Section 1406(a)—is rejected.

### B. Transfer to the District of Delaware Is Warranted Under Section 1404(a)

Even if transfer is not required under Section 1406(a), a district court may, in its discretion, transfer "any civil action to any other district or division where it might have been brought" when transfer would serve "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Therefore, this Court must determine whether Section 1404(a) permits transfer to either the Middle District of Tennessee, as Defendants assert, or the District of Delaware, as the forum selection clause directs.[6] To answer that question, the Court looks to the multi-factor

---

[6] This action could have been brought in either the Middle District of Tennessee, which is where all Defendants reside, see 28 U.S.C. § 1391(b)(1), or the District of Delaware, which is the designated forum under the Franchise Agreement.

balancing test developed by the Third Circuit "to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The balancing test consists of various private considerations[7] and public considerations.[8]

However, the inquiry under Section 1404(a) is altered by the Franchise Agreement's forum selection clause, which provides that:

> [T]he exclusive venue and exclusive forum for all disputes between the parties shall be any court of general jurisdiction located in Delaware and/or the United States District Court for the District of Delaware.

(ECF 8-3 at 44, Franchise Agreement ¶ 21.2.) The Supreme Court has instructed that in the event of a forum selection clause, the court must "deem the private-interest factors to weigh entirely in favor of the preselected forum." Atlantic Marine, 571 U.S. at 64. As a result, the transfer analysis turns on the public interest factors, and because "those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." Id.; see also Jumara, 55 F.3d at 875 (noting that the venue designated in a forum selection clause is entitled to "*substantial* although not dispositive weight." (emphasis added)).

---

[7] The private considerations include the plaintiff's forum preference; the defendant's forum preference; the location where the claim arose; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses; and the location of books and records. Jumara, 55 F.3d at 879.

[8] The public considerations include the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with applicable state law in diversity cases. Jumara, 55 F.3d at 879–880.

The Section 1404(a) analysis is further modified because here, not all parties are bound by the forum selection clause.[9]  The Third Circuit has explained that in these circumstances, the Court must consider four inquiries, in sequence: (1) the forum-selection clause; (2) the private and public interests relevant to the noncontracting parties; (3) threshold issues related to severance; and (4) which transfer decision most promotes efficiency while minimizing prejudice to the noncontracting parties' private interests.  In re Howmedica Osteonics Corp., 867 F.3d 390, 404 (3d Cir. 2017).

**Step (1):** Defendant Roll Up, Defendant Peter Aguib and Plaintiff Sweet Charlie's Franchising, LLC are parties to the Franchise Agreement, which provides that Delaware is the exclusive venue for litigation.  None of the public considerations "overwhelm[]" or outweigh the Delaware forum selection clause.  Atlantic Marine, 571 U.S. at 67.  The Supreme Court made clear that contractual forum selection clauses govern "[i]n all but the most unusual cases," and this is not an atypical case where the forum selection clause should be disregarded.  Id. at 66.  Therefore, Atlantic Marine indicates this case should be transferred to Delaware.  However, because the remaining defendants are not bound, the Court proceeds to step (2) of the Howmedica framework.

**Step (2):** At the second step, the Court independently analyzes the private and public considerations relevant to the noncontracting parties.  Howmedica, 867 F.3d at 404.  The private consideration that most strongly favors transfer to Tennessee is the factor addressing convenience of the parties.  It is easier for Plaintiffs, a national business franchise with locations all over the country, to litigate in Tennessee than it is for Defendants, who reside in Tennessee, to defend themselves in either Philadelphia or Delaware.  Relatedly, Defendants have represented that it

---

[9] The Franchise Agreement is between Defendant Roll Up, signed by Defendant Peter Aguib, and Plaintiff Sweet Charlie's Franchising, LLC.  The other three defendants, Pola Aguib, Simon Ghattas, and Sweet Moo's, are not signatories.  Neither is Plaintiff Sweet Charlie's Holdings, LLC.

7

would be difficult for them to obtain counsel in Philadelphia or Delaware, but that they likely would be represented in Tennessee.  The bankruptcy case for Defendant Sweet Moo's is also proceeding in Tennessee.  The outcome that is most convenient for the noncontracting parties is to litigate this case in Tennessee.  Because steps (1) and (2) point to different forums (Delaware and Tennessee), this Court proceeds to step (3) of the Howmedica analysis.

**Step (3):** At the third step, the Court evaluates the possibility of severance by considering "the presence of indispensable parties and defects in subject-matter jurisdiction, personal jurisdiction, venue, or joinder."  Id. at 408.  Here, Defendant Sweet Moo's is a necessary party— it is the company that Plaintiffs allege is misappropriating Sweet Charlie's trade secrets.  If this case is transferred to Delaware, there may be issues of personal jurisdiction as to Sweet Moo's and the two individual defendants who are not bound by the Franchise Agreement.[10]  However, Defendants did not raise these personal jurisdiction questions and neither will this Court.

**Step (4):** The inquiries at step (1), step (2), and step (3) of the Howmedica analysis present this Court with two options: transfer the case to Delaware or transfer the case to Tennessee.  At step (4), three considerations guide the analysis of which option should be selected: "efficiency, the non-contracting parties' private interests, and Atlantic Marine's directive that courts should not . . . disrupt the parties' settled expectations embodied in forum-selection clauses except when other factors overwhelmingly weigh against enforcing the clauses."  Howmedica, 867 F.3d at 409 (internal quotation marks and citation omitted).  The interest of efficiency is best served by transferring this case, in its entirety, to Delaware.  If only the parties who signed the Franchise Agreement are severed, then the noncontracting parties would have to litigate either in this Court

---

[10] Defendants stated that they are "opposed to and will not consent to" the transfer to Delaware. (ECF 17 at 1.)

or in Tennessee. But in either case, there would be duplicative proceedings. Additionally, the burden the noncontracting defendants may face in defending this case in Delaware is not enough to overcome the forum selection clause and the resulting strong presumption in favor of the Delaware courts.

In sum, "the strong public interest in upholding the contracting parties' settled expectations is [not] overwhelmingly outweighed by the countervailing interests." Id. at 405 (internal quotation marks and citation omitted). The Court, exercising its discretion under Section 1404(a), finds that the interest of justice is best served by transferring this action to Delaware pursuant to the forum selection clause in the Franchise Agreement. Therefore, this case will be transferred, in its entirety, to the District of Delaware.

## VI. Conclusion

For the foregoing reasons, Defendants' Motion to Transfer, (ECF 8), is denied. Instead, this case will be transferred to the District of Delaware. This action is stayed as to Defendant Sweet Moo's.

An appropriate Order follows.

O:\CIVIL 19\19-4618 Sweet Charlie's v. Sweet Moo's\19cv4618 Memorandum re Transfer